IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

KYUNG-HEE KIM

     Plaintiff,

v.

THE COLLEGE OF WILLIAM AND MARY IN VIRGINA | COMMONWEALTH OF VIRGINIA

And

PEGGY AGOURIS,
*In Her Individual Capacity and Official Capacity,*

     Defendants.

Case No:

Demand for Jury Trial

## COMPLAINT

The above-named Plaintiff, Kyung-Hee Kim ("Dr. Kim"), by counsel, states as her Complaint against Defendant The College of William & Mary in Virginia | Commonwealth of Virginia ("W&M"), and Peggy Agouris, in her individual and official capacities, the following:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as a question of federal law, 28 U.S.C. § 1331, namely the Rehabilitation Act of 1973, as amended, codified at 29 U.S.C. §§ 701 *et seq.* ("Rehabilitation Act" or "Act").

2. Dr. Kim is a resident of Fairfax County, Virginia, and was employed by W&M.

3. W&M is a public institution of higher education and an agency of the

1

Commonwealth of Virginia. At all times pertinent to this matter, Dr. Kim was employed at W&M's main campus in Williamsburg, Virginia.

4. The harm suffered by Dr. Kim occurred within Williamsburg, Virginia and the surrounding area.

5. Pursuant to 42 U.S.C. § 2000d-7(a)(1), "[a] State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . ."

6. W&M accepts federal financial assistance from the U.S. Government such that it is an employer and actionable defendant pursuant to the Rehabilitation Act.

7. Defendant Agouris is Provost of W&M and was a decision-maker regarding Dr. Kim's employment and her multiple accommodations requests as provided below.  She rejected Dr. Kim's August 5 and August 30, 2022 written complaints of disability discrimination and retaliation, had accountability for her subordinate Dean Robert Knoeppel's March 2023 decisions regarding the Dr. Kim's multiple accommodation requests as provided below, and exercised substantial authority in the disciplinary and dismissal proceedings.

8. Venue is proper in this Court, as the acts and/or omissions substantially occurred within the Court's geographic area. *See* 28 U.S.C. § 1391(b)(2).

## II. THE FACTS

8. Dr. Kim realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

9. Dr. Kim was hired by W&M on August 1, 2008 as a Professor in the School of

2

Education (School Psychology and Counselor Education), received tenure in 2011, and currently serves as a tenured Full Professor.

10. Dr. Kim worked full-time for W&M and at all times met the essential functions and legitimate expectations of her position, including teaching, research, and service, maintaining documented scholarly productivity and student evaluation scores within the School of Education's published benchmark range. Dr. Kim was hired by W&M on August 1, 2008 as an Assistant Professor in the Department of School Psychology and Counselor Education within the School of Education (School Psychology and Counselor Education), received tenure in 2011, and has served as a tenured Full Professor since 2017.

11. W&M has subjected Dr. Kim to a pattern of discriminatory and retaliatory adverse employment actions, including denial of reasonable accommodations, removal of contractual benefits, reassignment of core duties, a prolonged suspension, and dismissal proceedings, as further described below.

12. As a direct and proximate result of W&M's actions, Dr. Kim has suffered and will continue to suffer pecuniary losses, including lost merit-based salary increases, lost pension accumulation, back pay, and front pay reflecting the loss of future earning capacity, as well as emotional distress.

13. At all times material hereto, W&M engaged in unlawful or discriminatory practices with malice or reckless indifference to the statutorily protected rights of Dr. Kim.

14. W&M has violated Dr. Kim's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, oppressively, maliciously, fraudulently, or with reckless disregard for Dr. Kim's rights.

15. At all times material hereto, W&M treated Dr. Kim in a discriminatory manner in comparison with non-disabled employees.

16. At all times material hereto, W&M treated Dr. Kim in a discriminatory manner in comparison with similarly-situated employees.

17. At all relevant times, W&M was a public university and an instrumentality of the Commonwealth of Virginia.

18. At all relevant times, W&M received federal financial assistance.

19. W&M's receipt of federal financial assistance subjected its employment practices to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

20. Section 504 prohibits disability discrimination by a college or university receiving federal financial assistance and applies the employment-discrimination standards of Title I of the Americans with Disabilities Act to such claims. 29 U.S.C. § 794(a), (b)(2), and (d). ([Legal Information Institute][1])

21. Dr. Kim was involved in a serious automobile accident on or about May 1, 2020.

22. As a result of the accident, Dr. Kim sustained a traumatic brain injury, cervical-spine injuries requiring a multilevel cervical fusion, lumbar radiculopathy, and related neurological and physical impairments.

23. Dr. Kim's traumatic brain injury substantially limited one or more major life activities, including concentrating, thinking, processing auditory information, communicating during stressful interactions, remembering oral communications, and sleeping.

24. Dr. Kim's lumbar radiculopathy and related physical impairments substantially

limited one or more major life activities, including driving, sitting, standing, walking, and performing certain physical tasks.

25. Dr. Kim experienced cognitive fatigue, reduced tolerance for stressful real-time communications, difficulty processing auditory information in real time, difficulty recalling oral conversations without documentation, persistent leg numbness, pain, and insomnia.

26. Dr. Kim was therefore an individual with a disability within the meaning of the Rehabilitation Act.

27. Alternatively, Defendants regarded Dr. Kim as having a physical or mental impairment, including when it subjected her to a fitness-for-duty process questioning her ability to perform her position.

28. Defendants knew of Dr. Kim's disabilities through, among other things, her medical leaves, communications with administrators and Human Resources, medical documentation, requests for workplace accommodations, and participation in the accommodation process.

29. Dr. Kim was qualified to perform the essential functions of her professor position, with a reasonable accommodation.

30. Dr. Kim had performed the duties of a professor for many years, had received tenure, and continued to engage in scholarly research, writing, publication, course development, and other professional activities following her injuries.

31. In 2023, Dr. Kim's physicians recommended workplace accommodations that included remote or online teaching, a consistent schedule without unexpected last-

minute changes, written communications concerning stressful administrative matters, avoidance or modification of adversarial real-time oral communications, and additional time to respond to administrative communications.

32. Those proposed accommodations addressed the limitations caused by Dr. Kim's traumatic brain injury, lumbar radiculopathy, inability to drive safely, cognitive fatigue, and difficulty processing stressful oral communications.

33. The proposed accommodations were reasonable and would have permitted Dr. Kim to continue performing the essential functions of her position.

34. Remote teaching was a feasible accommodation because Dr. Kim taught or could teach courses online and because teaching and research activities did not themselves trigger the same symptoms as adversarial administrative interactions.

35. Written administrative communications and additional response time were feasible accommodations because they did not eliminate any essential function of Dr. Kim's position and instead affected the manner in which administrative information was communicated.

36. On or about March 16, 2023, Dr. Kim submitted medical documentation from her neurologist and pain-management physician during the return-to-work process.

37. The documentation stated that Dr. Kim could return to work with accommodations.

38. The documentation recommended remote or online teaching because Dr. Kim could not safely drive.

39. The documentation also recommended a consistent schedule without last-minute

changes because sudden changes could cause confusion.

40. On or about March 27, 2023, Dr. Kim contacted the W&M administration concerning her return to work and appropriate work responsibilities.

41. Dean Knoeppel responded that he had informed the third-party leave administrator that W&M could not meet Dr. Kim's accommodations.

42. Dean Knoeppel further stated that he would not assign Dr. Kim work responsibilities until she obtained medical confirmation that she could return to work "without any accommodations."

43. Requiring Dr. Kim to return without accommodations was inconsistent with her physicians' restrictions and effectively conditioned her return to work on relinquishing her right to reasonable accommodation.

44. Dr. Kim responded by providing the medical form stating that she could return to work with accommodations as possible.

45. On March 30, 2023, Dr. Kim again asked to return to work. Defendants denied this request.

46. On April 13, 2023, Dr. Kim again asked to be permitted to return to productive work, explained her traumatic brain injury and continuing treatment, and acknowledged that immediate reassignment to classroom teaching might not be practical in the middle of a semester.

47. Dean Knoeppel did not meaningfully respond to Dr. Kim's proposed alternatives or identify any undue hardship associated with them.

48. Dr. Kim submitted additional accommodation documentation on or about August

31, 2023.

49. Dr. Kim submitted updated accommodation documentation on or about December 15, 2023.

50. On or about September 3, 2024, Dr. Kim submitted a further formal accommodation request supported by documentation from her neurologist and psychiatrist.

51. That request sought written communications for high-stress administrative matters, avoidance or modification of adversarial real-time oral interactions, and additional time to respond.

52. On or about October 18, 2024, W&M Human Resources notified Dr. Kim that a concern about her recent behavior had been referred to the Fitness-for-Duty team for review to determine whether her ability to perform essential job functions might be impaired by a medical condition. The notice stated that the review could result in a referral for an independent medical evaluation.

53. After more than a year without notice of the status or outcome of the Fitness-for-Duty review, and only in response to Dr. Kim's repeated inquiries, Human Resources stated on or about January 20, 2026, that there was no ongoing Fitness-for-Duty process. William & Mary did not state when or why the process had ended, explain its disposition, or communicate any finding that Dr. Kim was unfit to perform her position.

54. During that process, Dr. Kim explained that her ordinary teaching and research activities did not trigger disabling symptoms to the same degree as stressful and adversarial administrative communications.

55. W&M did not implement the requested written-communication accommodation, additional response time, or other effective accommodation.

56. Instead, shortly after Dr. Kim's renewed accommodation request, Human Resources initiated a fitness-for-duty evaluation questioning Dr. Kim's ability to perform her job.

57. On or about August 18, 2024, Dr. Kim informed Dean Knoeppel that, because of her traumatic brain injury, she experienced difficulty processing auditory information, responding immediately, and recalling specific conversations. Dr. Kim explained that she usually communicated in writing, recorded her classes and conversations with students, and followed the scripts contained in her course presentations to promote accuracy and compensate for those limitations.

58. Recording meetings allowed Dr. Kim to review communications, ensure accurate comprehension, and compensate for limitations associated with her traumatic brain injury. There is no policy at W&M that bans or prevents recording. Dr. Kim consistently provided notice to others if she chose to record.

59. Recording conversations and meetings allowed Dr. Kim to review communications, comprehend them accurately, and compensate for processing and memory limitations associated with her traumatic brain injury. Dr. Kim repeatedly informed Dean Knoeppel of her disability-related need to preserve and review communications. W&M did not identify any University policy prohibiting Dr. Kim's recording, and both Dean Knoeppel and the Faculty Hearing Committee ("FHC") Chair acknowledged in writing that recording was permitted under Virginia law.

60. On or about December 2, 2024, Dr. Kim disclosed during a meeting with Dean Knoeppel that she was recording the discussion.

61. Dean Knoeppel abruptly terminated the meeting without addressing Dr. Kim's previously communicated accommodation needs.

62. During the ensuing disciplinary proceedings, Dr. Kim continued requesting sufficient processing and response time, and the documents necessary to understand and respond accurately to the allegations against her.

63. Defendants characterized Dr. Kim's disability-related requests for written communication, documentation, and additional processing time as "non-compliance."

64. In doing so, Defendants treated manifestations of Dr. Kim's disability and her efforts to obtain accommodations as misconduct.

65. Defendants failed to engage in a good-faith interactive process directed toward identifying an effective accommodation.

66. Defendants did not and cannot establish that the requested accommodations would eliminate an essential function of Dr. Kim's position.

67. Dr. Kim's requested accommodations would have enabled her to perform the essential functions of her position.

68. Defendants did not and cannot establish that the requested accommodations would impose an undue hardship.

69. Defendants did not offer an effective alternative accommodation permitting Dr. Kim to perform her position while addressing her documented limitations.

70. Following Dr. Kim's disability, medical leave, and requests for accommodations,

10

Defendants removed or withheld graduate-assistant support that Dr. Kim's faculty contract provided for ten hours per week.

71. Dr. Kim had retained graduate-assistant support during an earlier medical leave in 2018, but the support was removed during her recovery following the 2020 accident and was not restored.

72. Defendants nevertheless evaluated Dr. Kim's scholarly productivity during the same period in which it had removed the assistance used for her research and editorial work.

73. Following Dr. Kim's disability and medical leave, Defendants also excluded Dr. Kim from committee assignments and shared-governance responsibilities ordinarily performed by tenured faculty.

74. Following Dr. Kim's return from leave, Defendants reassigned Dr. Kim's established doctoral-level research course to a more junior faculty member.

75. Following Dr. Kim's 2020 automobile accident and disability-related medical leaves, Defendants did not evaluate her teaching, scholarship, or service in accordance with the School of Education's established evaluation criteria.

76. Defendants instead assigned Dr. Kim courses and overlapping teaching obligations that were more physically and cognitively taxing and that contributed to her need for additional medical leave.

77. Defendants subjected Dr. Kim to irregular or unfavorable evaluations that did not reasonably account for her documented productivity or the supports and assignments that Defendants had removed.

11

78. Dr. Kim did not receive merit-based salary increases during the relevant period despite continuing scholarly activity and professional contributions.

79. On or about January 17, 2025, Defendants suspended Dr. Kim from teaching and restricted her communications with students.

80. The suspension continued for approximately fourteen months.

81. During the suspension, Dr. Kim was removed from the teaching and faculty responsibilities central to her tenured position.

82. The Faculty Hearing Committee did not conclude that Dr. Kim posed a safety risk or was instructionally unfit and recommended probation rather than dismissal.

83. On or about January 16, 2026, Dr. Kim submitted updated neurological documentation confirming the continuing effects of her traumatic brain injury and continuing need for reasonable accommodations.

84. Defendant Agouris also prohibited Dr. Kim from disclosing, discussing, or mentioning the reassignment or underlying allegations to any William & Mary faculty member, staff member, or student; anyone Dr. Kim suspected had reported the alleged conduct; or any similarly situated person. Although the directive permitted communications with faculty and administrators during the official inquiry or investigation, its broad restrictions isolated Dr. Kim and impaired her ability to locate witnesses, obtain evidence, and defend herself. As of July 31, 2026, Dr. Kim has remained continuously subject to the same teaching suspension and communication restrictions for more than eighteen months, and both remain in effect.

85. During the suspension, Defendants removed Dr. Kim from the teaching, student-

contact, service, and shared-governance responsibilities central to her tenured faculty position and assigned her solely to research.

86. Defendant Agouris's January 17, 2025 notice stated that the reassignment and communication restrictions were based on her determination that Dr. Kim posed a "likely threat of harm" to one or more members of the William & Mary community. The FHC later made no finding that Dr. Kim posed a safety risk or lacked the subject-matter competence necessary to teach, and it recommended a minor sanction and teaching probation rather than dismissal.

87. On or about January 16, 2026, Neurologist Dr. Tracy Fulton completed updated neurological accommodation documentation, which Dr. Kim submitted to Human Resources on January 16, 2026. The documentation confirmed the continuing effects of Dr. Kim's traumatic brain injury and her continuing need for reasonable accommodations. Defendants had notice of this documentation.

88. On or about February 3, 2026, Provost Peggy Agouris informed Dr. Kim that Defendants believed dismissal was warranted and proposed that Dr. Kim resign in exchange for salary continuation, a lump-sum payment, and a release of claims.

89. On or about March 19, 2026, Provost Agouris issued written notice terminating Dr. Kim's tenured employment effective March 24, 2026.

90. The termination exceeded the sanction recommended by the Faculty Hearing Committee and followed Dr. Kim's repeated accommodation requests and W&M's characterization of accommodation-related conduct as noncompliance.

91. Defendants' actions denied Dr. Kim equal employment opportunities and

subjected her to materially adverse changes in the terms, conditions, privileges, and benefits of employment.

92. Defendants discriminated against Dr. Kim because of her disability by, among other things:

    a. Refusing to permit her to return to work unless she could work without accommodation;

    b. Failing to provide reasonable accommodations;

    c. Failing to engage in a good-faith interactive process;

    d. Subjecting her to a fitness-for-duty process instead of implementing accommodations;

    e. Treating disability-related communication and processing needs as misconduct or noncompliance;

    f. Removing work support and responsibilities;

    g. Assigning materially less favorable or more burdensome duties;

    h. Denying normal professional and governance opportunities;

    i. Withholding compensation increases

    j. Suspending her from teaching; and

    k. Terminating her employment.

93. The stated reasons for the adverse actions were not the true reasons for Defendant's conduct or were insufficient to explain the severity and escalation of the actions taken.

94. Among other facts supporting an inference of discrimination, Defendants

demanded an unrestricted return to work, denied or failed to implement medically supported accommodations, initiated a fitness-for-duty examination shortly after a renewed accommodation request, treated accommodation-related conduct as misconduct, and terminated Dr. Kim shortly after she again documented her continuing disability and need for accommodation.

95. Dr. Kim's disability was a but-for cause of one or more of the challenged employment decisions and, as applicable, Dr. Kim was subjected to discrimination solely by reason of her disability within the meaning of Section 504.

96. As a direct and proximate result of Defendant's violations, Dr. Kim suffered lost wages, lost salary increases, lost benefits, diminished retirement contributions, loss of future earning capacity, professional injury, emotional distress, inconvenience, and other compensable harm.

97. Defendants acted intentionally and with deliberate indifference to Dr. Kim's federally protected rights after receiving repeated notice of her disabilities and requested accommodations.

98. Dr. Kim is entitled to all relief authorized by the Rehabilitation Act, including declaratory and injunctive relief, reinstatement or front pay as appropriate, back pay, compensatory damages, prejudgment interest, attorneys' fees, costs, and other appropriate relief. The Rehabilitation Act incorporates remedies available against recipients of federal assistance and authorizes attorney's fees to a prevailing Dr. Kim. 29 U.S.C. § 794a.

15

## COUNT I: FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE REHABILITATION ACT OF 1973
## AGAINST DEFENDANT W&M

99. Dr. Kim realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

100. The Rehabilitation Act incorporates the ADA's employment standards and requires employers to provide reasonable accommodations to employees with disabilities.

101. Defendants perceived Dr. Kim as disabled.

102. Dr. Kim requested reasonable accommodations that would not allow her to meet the essential functions of her job without an undue burden or hardship on W&M.

103. Defendants failed to engage in the interactive process to ascertain a reasonable accommodation for Dr. Kim.

104. Defendants denied Dr. Kim accommodations to which she was legally entitled.

105. Dr. Kim suffered pecuniary and non-pecuniary damages as a result of W&M's failure to accommodate.

106. W&M knew it had a duty to accommodate Dr. Kim but it intentionally violated this duty.

107. W&M violated the Rehabilitation Act by failing to accommodate Dr. Kim.

## COUNT II: RETALIATION
## IN VIOLATION OF THE REHABILITATION ACT OF 1973
## AGAINST DEFENDANT W&M

108. Dr. Kim realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

109.     Dr. Kim engaged in protected activity by requesting medical leave and reasonable accommodations for her disabilities.

110.     Dr. Kim engaged in protected activity by submitting medical documentation supporting her accommodation requests.

111.     Dr. Kim engaged in protected activity by participating in W&M's accommodation process.

112.     Dr. Kim engaged in protected activity by opposing W&M's refusal to provide accommodations and its requirement that she return without accommodations.

113.     Dr. Kim reasonably believed that the conduct she opposed violated federal disability-discrimination law.

114.     W&M knew of Dr. Kim's protected activity.

115.     Dean Knoeppel knew of Dr. Kim's accommodation requests because he received or discussed them and expressly rejected her proposed return with accommodations.

116.     Human Resources knew of Dr. Kim's protected activity because it received medical documentation and participated in the accommodation process.

117.     Provost Agouris knew or reasonably should have known of Dr. Kim's accommodation requests and disability complaints when reviewing the disciplinary record, proposing resignation, and deciding to terminate Dr. Kim.

118.     After Dr. Kim engaged in protected activity, W&M subjected her to actions that would dissuade a reasonable employee from requesting accommodations or opposing disability discrimination.

17

119.    Those materially adverse actions included, without limitation:

    a.  Refusing to permit her to return to work unless she could work without accommodation;

    b.  Failing to provide reasonable accommodations;

    c.  Failing to engage in a good-faith interactive process;

    d.  Subjecting her to a fitness-for-duty process instead of implementing accommodations;

    e.  Treating disability-related communication and processing needs as misconduct or noncompliance;

    f.  Removing work support and responsibilities;

    g.  Assigning materially less favorable or more burdensome duties;

    h.  Denying normal professional and governance opportunities;

    i.  Withholding compensation increases

    j.  Suspending her from teaching; and

    k.  Terminating her employment.

120.    The adverse actions escalated after Dr. Kim repeatedly sought accommodations and opposed disability discrimination.

121.    In March 2023, Dean Knoeppel rejected Dr. Kim's accommodation request and required clearance to work without accommodations.

122.    In August and December 2023, Dr. Kim submitted additional accommodation documentation.

123.    In September 2024, Dr. Kim renewed her formal request with

documentation from her neurologist and psychiatrist.

124.    Shortly thereafter, Human Resources initiated a fitness-for-duty examination rather than implementing the requested accommodations.

125.    During the disciplinary process, Defendants treated Dr. Kim's repeated requests for written communication and documents as defiance or noncompliance.

126.    On January 16, 2026, Dr. Kim again supplied medical documentation confirming her ongoing limitations and need for accommodations.

127.    Within weeks, Provost Agouris proposed that Dr. Kim resign in lieu of dismissal and release her claims.

128.    W&M thereafter terminated Dr. Kim's employment effective March 24, 2026.

129.    The sequence, timing, escalating severity, inconsistent explanations, departures from ordinary processes, and conversion of accommodation-related conduct into alleged misconduct support a reasonable inference of retaliatory causation.

130.    The reasons asserted for the adverse actions were false, exaggerated, inconsistent, selectively enforced, or insufficient to motivate the actions actually taken.

131.    Dr. Kim's protected activity was a but-for cause of one or more of the materially adverse actions.

132.    As a direct and proximate result of the retaliation, Dr. Kim suffered the damages and injuries described above.

133.    Dr. Kim is entitled to declaratory relief, appropriate injunctive relief, back pay, reinstatement or front pay, compensatory damages to the extent authorized,

prejudgment interest, attorneys' fees, costs, and other appropriate relief.

## COUNT III: 42 U.S.C. § 1983
## DUE PROCESS VIOLATION
## AGAINST DEFENDANT AGOURIS

134.    At all times relevant, Defendant Agouris acted under color of state law.

135.    Dr. Kim realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

136.    Dr. Kim held tenure and therefore could not be dismissed except for specified cause and through prescribed procedures.

137.    University officials issued conduct directives governing her teaching, grading, and communications before completing a formal evidentiary process.

138.    The disciplinary charge ultimately focused on her failure to comply with those directives.

139.    Dr. Kim contends that disability-related requests for written communications, documents, and additional processing time were treated as defiance or noncompliance.

140.    Communication restrictions allegedly prevented her from contacting students who might support her, while administrators gathered statements from dissatisfied students.

141.    The Faculty Hearing Committee recommended probation, but the Provost escalated the sanction to dismissal.

142.    The Committee itself noted the rapid escalation of sanctions and explained that progressive discipline and an opportunity for behavioral correction supported

20

probation rather than dismissal.

143.    The Provost terminated Dr. Kim notwithstanding that lesser recommendation, after a prolonged suspension and additional accommodation documentation.

144.    The process provided by Defendant did not provide Dr. Kim meaningful notice of the grounds for dismissal nor a meaningful opportunity to present her side before the final deprivation of rights.

145.    Dr. Kim was terminated on grounds materially different from the charge adjudicated by the Faculty Hearing Committee.

146.    Defendant Agouris relied on conduct as to which Dr. Kim had no notice or opportunity to respond.

147.    Dr. Kim was denied access to the evidence used against her.

148.    Disability-related communication limitations prevented meaningful participation and officials refused reasonable procedural adjustments.

149.    Defendant Agouris, the final decisionmaker, had predetermined Dr. Kim's dismissal.

150.    The FHC described its formal charge as whether Dr. Kim committed misconduct by failing to follow the Dean's December 20, 2024 directives. It stated that due process prohibited it from making findings beyond the scope of that charge because doing so would deny notice and a reasonable opportunity to respond.

151.    Defendant Agouris terminated Dr. Kim based on broader allegations that were not actually charged and adjudicated.

21

152. At all relevant times, Dr. Kim was a tenured full professor at W&M.

153. Under Virginia law, W&M's governing policies, and Dr. Kim's tenure appointment, Dr. Kim possessed a legitimate claim of entitlement to continued employment and could not be dismissed except for cause and through constitutionally adequate procedures.

154. Dr. Kim therefore possessed a constitutionally protected property interest in her continued public employment within the meaning of the Due Process Clause of the Fourteenth Amendment.

155. Dr. Kim's protected property interest included not only her continued employment, but also the salary, benefits, tenure rights, academic status, professional responsibilities, and other incidents of her tenured appointment.

156. Dr. Kim could not be deprived of that property interest absent due process of law, including meaningful notice of the charges against her, disclosure of the evidence supporting those charges, and a meaningful opportunity to respond before a neutral decisionmaker.

157. Defendant Agouris exercised final authority, or substantial decision-making authority, regarding Dr. Kim's continued employment and ultimate dismissal.

158. Defendant Agouris personally reviewed Dr. Kim's disciplinary record, the recommendations of the Faculty Hearing Committee, Dr. Kim's medical documentation, Dr. Kim's accommodation requests, and Dr. Kim's responses to the allegations against her.

159. Defendant Agouris knew that Dr. Kim was a tenured professor possessing a

constitutionally protected property interest in her continued employment.

160.    Defendant Agouris further knew that the Faculty Hearing Committee had recommended probation rather than dismissal and had concluded that Dr. Kim did not pose a safety risk or was otherwise unfit to teach.

161.    Notwithstanding the Faculty Hearing Committee's recommendation, Defendant Agouris elected to reject the recommended discipline and instead terminate Dr. Kim's tenured appointment.

162.    On or about March 19, 2026, Defendant Agouris issued the written decision terminating Dr. Kim's employment effective March 24, 2026.

163.    By issuing the termination decision, Defendant Agouris intentionally deprived Dr. Kim of her constitutionally protected property interest in continued public employment.

164.    Defendant Agouris deprived Dr. Kim of that property interest without providing the procedural protections required by the Fourteenth Amendment.

165.    Among other deficiencies, Defendant Agouris relied upon disciplinary findings and allegations that Dr. Kim contends were developed through procedures that denied her a meaningful opportunity to defend herself, improperly characterized disability-related accommodation requests as misconduct, and failed to provide constitutionally adequate notice and process.

166.    Defendant Agouris' decision to terminate Dr. Kim was made under color of state law and directly caused the deprivation of Dr. Kim's constitutionally protected property interest.

23

167.    As a direct and proximate result of Defendant Agouris' actions, Dr. Kim lost her tenured faculty position, salary, benefits, retirement accrual, academic status, professional reputation, and other valuable property interests associated with her tenured appointment.

168.    Dr. Kim has suffered pecuniary and non-pecuniary losses due to the acts of Defendant Agouris.

169.    Defendant Agouris, acting under color of state law and as the final decisionmaker, personally deprived Dr. Kim of her constitutionally protected property interest in continued public employment by issuing the final decision terminating Dr. Kim's tenured appointment without the procedural protections guaranteed by the Fourteenth Amendment.

WHEREFORE, Plaintiff Kyung-Hee Kim prays for judgment against Defendant The College of William & Mary in Virginia | Commonwealth of Virginia and Defendant Peggy Agouris, jointly and severally, for equitable relief, including injunctive relief, implementation of reasonable accommodations, back pay, front pay, compensatory damages, punitive damages, with pre- and post-judgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

Respectfully submitted,

/s/ _____
Thomas E. Strelka, Esq. (VSB No. 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
Tel: (540) 283-0802
thomas@vaemployment.law

24

*Counsel for Plaintiff*